Hon. Ricardo S. Martinez

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEFT COAST VENTURES, INC., a Delaware corporation,<br><br>                        Plaintiff,<br><br>       v.<br><br>BRIGHTSTAR, LLC, a limited liability company organized under the laws of Colorado,<br><br>                     Defendant. | Case No. 2:19-cv-00686-RSM<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>July 5, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

9

10

11

12

13

14

15

16

17

18

     Defendant Brightstar, LLC, ("Brightstar"), through undersigned counsel, hereby submits the following Motion to Dismiss Plaintiff's First Amended Complaint.[1]

19

### INTRODUCTION

20

     Notwithstanding Plaintiff's new allegations, this case is still about letters of intent, which are by definition noncommittal writings "detailing the preliminary understandings of parties who plan to enter into a contract or some other agreement[.]" *Black's Law Dictionary* 424 (3rd ed.

21

22

23

24

25

26

---

[1] This motion to dismiss is nearly the same as the motion to dismiss filed on May 15, 2019, which was rendered moot on June 5, 2019, after Plaintiff filed its First Amended Complaint. (*See* Min. Order, Doc. 11) (citing *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012)). As shown below, Plaintiff's First Amended Complaint adds only two inconsequential allegations to its original Complaint. Brightstar now moves to dismiss for the same legal deficiencies it raised in its first motion to dismiss. (*See generally* Doc. 6.)

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1996). Left Coast Ventures, Inc. ("Plaintiff" or "Left Coast") has filed suit seeking specific performance of the conditional nonbinding promises of such a letter.  The letter of intent Plaintiff asks the Court to enforce expired on its own terms and documents only the preliminary understandings of the parties for Plaintiff's *possible* acquisition of Brightstar's interests in Native Roots, LLC ("Native Roots"), a Colorado marijuana business. The letter plainly states that any obligations undertaken are not intended to be legally binding unless a definitive agreement regarding the proposed transaction is executed. Accordingly, Plaintiff's First Amended Complaint fails to state a claim for which relief may be granted because (1) indefinite agreements to contract at a later time are unenforceable under Washington law, (2) any conceivable obligation the letter of intent created expired pursuant to the terms of the letter, and (3) any conceivable breach of the letter of intent does not warrant as a matter of law the remedy of specific performance.  This case should be dismissed with prejudice.

## STATEMENT OF FACTS

For the purposes of this motion to dismiss, the relevant facts are as follows:[2] On August 25, 2017, Privateer Holdings, Inc. ("Privateer" or "Privateer Holdings"), sent Brightstar a letter of intent ("LOI") to "confirm[] the agreement of Privateer Holdings, Inc., . . . and Brightstar LLC . . . regarding the conduct of discussions relating to the *possible* acquisition" by Privateer Holdings of Brightstar's interest in Native Roots. (Am. Compl. Doc. 9, at p. 13) (emphasis added).[3] *Plaintiff's first of two new allegations is that Brightstar participated in the drafting of the LOI.* (*See id.* ¶18) For this "possible acquisition," Brightstar agreed to cooperate with Privateer Holdings while Privateer undertook due diligence to assess whether to eventually enter into negotiations to buy Brightstar's interest in Native Roots. (*Id.* Doc. 9, at p.13) *Plaintiff's second*

---

[2] Plaintiff makes a number of allegations about how Brightstar "was outmaneuvered by one of [its] partners" and how Left Coast's predecessor (assignor) solicited a number of Native Roots' interest-holders to obtain interests in Native Roots. (*See generally* Am. Compl. Doc. 9, at pp. 1, 4-6.) None of those allegations is material to the issue of whether Plaintiff has plausibly alleged a breach of contract or a declaratory judgment claim.

[3] Privateer Holdings is the original party to the letter of intent, but Privateer assigned any rights it had under the LOI to Plaintiff on January 31, 2019. (Am. Compl. Doc. 9 ¶28)

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

*of two new allegations is that Privateer already possessed due diligence materials, which it was*

*evaluating prior to and after the LOI was signed.* (*Id.* ¶20.)  To ensure fruitful and good faith

negotiations, the LOI provided that Brightstar would deal exclusively with Privateer Holdings

"[u]ntil 5:00 p.m. Pacific Time on December 31, 2017 (the "Termination Date")[.]" (*Id.* p.13)

After that date, Brightstar was free to "solicit, initiate, approve, facilitate or encourage,

engage in discussions or negotiations with, or furnish information to, any person other than

[Privateer Holdings] with respect to a Competing Transaction," which is defined in relevant part

as "any transfer or sale of [Brightstar]'s membership interests in [Native Roots]." (*Id.*) Moreover,

Brightstar and Privateer Holdings agreed that the existence and contents of the LOI and any

definitive acquisition agreement "shall not be disclosed to third parties." (*Id.* p.15)

Also attached to the LOI was a "summary of proposed terms." (*Id.* p.17). The summary of

proposed terms begins as follows:

> The obligations of the parties with respect to the proposed
> transaction are not intended to be legally binding unless and until a
> definitive agreement with respect to the proposed transaction is
> executed, and this document creates no obligation for either party
> to negotiate with respect to such transaction or to enter into such
> definitive agreement.

(*Id.*)

The terms included a proposed purchase price, a proposed transactional structure, and,

among other things, a proposed non-compete clause. (*Id.* p.18-19)  The proposed terms also

detailed myriad conditions precedent to any proposed acquisition. (*Id.* p.17)  Finally, the proposed

terms stated that if, "through no fault of [Privateer Holdings], the Proposed acquisition does not

close, [Brightstar] agrees to pay [Privateer Holdings] as liquidated damages the amount of

$2,000,000 cash[.]" (*Id.* p.18-19)  The LOI specifies that it "shall be governed by the internal

laws of the State of Washington, without reference to its choice of law rules."  (*Id.* p.15)

Privateer Holdings is the original party of the LOI, but Privateer assigned any rights it had

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 2

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1    under the LOI to Plaintiff on January 31, 2019. (Am. Compl. Doc. 9 ¶28.)  Subsequently, Plaintiff

2    filed its Complaint. According to Plaintiff, the LOI "is a binding commitment by Brightstar to sell

3    the Native Roots Entities to Privateer Holdings (or an entity affiliated with or designated by

4    Privateer Holdings), subject to Privateer Holdings' completion of its due diligence

5    investigation[.]" (*Id.* ¶19.)

6          Notwithstanding the lack of any allegation in Plaintiff's Complaint (of Plaintiff's First

7    Amended Complaint) that Privateer Holdings completed any due diligence—or that Brightstar

8    somehow interfered with Plaintiff's due diligence efforts—Plaintiff now requests declaratory

9    judgment and asserts a breach of contract claim against Brightstar positing that Plaintiff "is

10   entitled to the remedy of specific performance because an award of money damages would be

11   inadequate to compensate Left Coast for Brightstar's breach." (*Id.* ¶39.)

12         Plaintiff is not entitled to specific performance or to any other form of relief: It has failed

13   to state a claim for breach of contract.

14                                    **ARGUMENT**

15         A letter of intent is "[a] written statement detailing the preliminary understanding of

16   parties who plan to enter into a contract or some other agreement; [it is] a noncommittal writing

17   *preliminary to* a contract." *Black's Law Dictionary* 424 (3d ed. 1996) (emphasis added).

18   Indefinite letters of intent like the LOI in this case are unenforceable under Washington law. Even

19   if the LOI were somehow enforceable, any conceivable obligations it imposed expired on

20   December 31, 2017.  To the extent Plaintiff can even allege a breach—which it cannot—Plaintiff

21   is not entitled as a matter of law to specific performance. Plaintiff's new allegations about

22   Brightstar's contribution in drafting the LOI and Plaintiff's due diligence review before and after

23   the LOI was signed do nothing to cure the legal deficiencies already raised by Brightstar in its

24   previous motion to dismiss.

25         Plaintiff's Complaint thus fails to state a cognizable legal theory to support its claims. As

26   a result, dismissal with prejudice is proper in this case.

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 3

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

### 1. Legal Standard.

To survive a motion to dismiss pursuant to F.R.C.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Dismissal is appropriate where the complaint "fails to state a cognizable legal theory . . . to support a claim." *Singleton v. Intellisist, Inc.*, No. C17-1712RSL, 2018 WL 2113973, at *1 (W.D. Wash. May 8, 2018). In determining whether a complaint states a cognizable legal theory to support a claim, the court may draw on its judicial experience and common sense. *Ashcroft*, 556 U.S. at 679. The court should not accept as true those allegations which state only legal conclusions. *See id.* at 678-79. Finally, in addition to the complaint, a court may consider documents—like the LOI—that the complaint incorporates by reference. *See Singleton*, 2018 WL 2113973, at *1.

### 2. The LOI is unenforceable under Washington Law.

Under Washington law, which expressly governs the LOI, "[a]n agreement to negotiate a contract in the future is nothing more than negotiations." *Johnson v. Star Iron & Steel Co.*, 511 P.2d 1370, 1373 (Wash. 1973). Thus, "[a]greements to agree are unenforceable in Washington." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004) (defining an agreement to agree as "an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete") (citation omitted). These agreements are unenforceable because the terms are not sufficiently definite, and "[i]f an offer is so indefinite that a court cannot decide just what it means and fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement." *Casad v. Huff*, No. 32692—2—II, 2005 WL 3541569, at *4 (Wash. Ct. App. 2005).

*Casad* is instructive. In that case, Daniel Huff invented a device to test sealants around building windows. *Id.* at *1. Huff was then introduced to Casad, who owned a business that could

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 4

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

support the marketing and development of Huff's invention. *Id.* Discussions between Casad and Huff culminated in a letter of intent "written to outline discussions and tentative agreements to date regarding a potential new business relating to the Curtain Wall Industry." *Id.* The letter of intent had a number of specified terms.  Most significant was the agreement "that Daniel Huff will transfer his rights of ownership" of his idea to a holding company "specifically set up to hold the patent." *Id.* at *2. The letter of intent concluded in paragraph 12 by stating that the "[e]xact company structure and subsequent agreements are not yet determined, and needs to be done quickly." *Id.* Subsequent negotiations ultimately failed; Casad unilaterally formed the new company; Huff refused to transfer his interests; and Casad consequently "filed a complaint for declaratory judgment requesting that the court order specific performance of the letter of intent." *See id.*

The trial court denied Huff's motion to dismiss because it determined that the letter of intent demonstrated the parties' intent "to enter into a binding contract and that Huff had breached the contract." *Id.* The trial court found "that paragraph 12 was an 'agreement to an agreement,' and it severed that portion of the letter of intent" as unenforceable. *Id.* The case ultimately went to trial and the trial court found in favor of Casad, and therefore ordered specific performance pursuant to the terms of the letter of intent, meaning Huff was compelled to transfer his interests in his patent. *Id. **The Washington Court of Appeals reversed the decision***, holding "that the letter of intent lacked mutual assent to form a binding contract because it was merely an agreement to agree and it contemplated future negotiations." *Id.* *1.

The Washington Court of Appeals first agreed with Huff that "the trial court improperly severed paragraph 12 from the letter of intent because it 'embodied the very heart of the parties' agreement' and demonstrated the parties' intent to further negotiate before giving binding effect to the tentative agreements outlined in the letter of intent." *Id.* at *4. Viewing the letter of intent as a whole—including paragraph 12—the Washington Court of Appeals held that "the parties [] expressed the intent not to be bound, specifically and unambiguously stating the need for further

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 5

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

negotiations regarding the business." *Id.* at *7 (stressing that the language of the letter of intent referenced "tentative agreements" for a "potential new business," which "emphasizes the provisional nature of the parties' agreement"). Accordingly, the appellate court concluded that "although the parties had reached agreement as to some key terms of the deal, the agreement required a further meeting of the minds before it would become an enforceable contract." *Id.*

So too here. The LOI states:

> The obligations of the parties with respect to the proposed transaction ***are not intended to be legally binding unless and until a definitive agreement with respect to the proposed transaction is executed***, and this document creates no obligation for either party to negotiate with respect to such transaction or to enter into such definitive agreement.

(Am. Compl. Doc. 9, at p.17.) (emphasis added) Plaintiff asserts that Brightstar had the "unconditional obligation to sell and transfer" its interests in Native Roots to Privateer Holdings. (*Id.* ¶19.) This statement blithely disregards the conditional language stated throughout the LOI— "possible acquisition"; "proposed terms"; "each party agrees that no contract . . . shall exist or be deemed to exist by virtue of this LOI"; "[t]he obligations of the parties with respect to the proposed transaction are not intended to be legally binding" (*See generally id.*) It is therefore without question that "the parties [] expressed the intent not to be bound, specifically and unambiguously stating the need for further negotiations regarding the business." *See Casad*, 2005 WL 3541569, at *7.

Indeed, even Plaintiff acknowledges that it repeatedly reiterated its "intent to close the deal; [and that each time Brightstar] agreed." (Am. Compl. Doc. 9, ¶22.) (*see also id.* ¶23) (alleging that Privateer Holdings told Brightstar "that Privateer Holdings ***intended*** to complete the deal" and that Brightstar "responded that Brightstar also ***intended*** to complete the deal." (emphases added)) But intent to do something is not enough: "an intention to do a thing is not a promise to do it." *Meissner v. Simpson Timber Co.*, 421 P.2d 674, 679 (Wash. 1966). A contract,

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

as Washington law has long held, requires an offer, which "consists of a ***promise*** to render a stated performance in exchange for a return ***promise*** being given." *Pac. Cascade Corp. v. Nimmer*, 608 P.2d 266, 268 (Wash. Ct. App. 1980) (emphases added). Here there is no sufficiently definite "promise" to compel Brightstar to sell its interests in Native Roots.

In sum, the LOI in this case is unenforceable because "it was merely an agreement to agree and it contemplated future negotiations." *See Casad*, 2005 WL 3541569, at *1. *See also Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945 (Wash. 2004). For those reasons, Plaintiff's Complaint has not stated a plausible claim for either a breach of contract or a declaratory judgment claim.

### 3.    Even assuming the LOI is an enforceable binding contract, any obligations under the LOI expired on December 31, 2017.

Contract interpretation is a question of law "when the interpretation does not depend on the use of extrinsic evidence." *Viking Bank v. Firgrove Commons 3, LLC*, 712, 334 P.3d 116, 119 (Wash. Ct. App. 2014). Plaintiff asserts that Brightstar has—apparently in perpetuity—the "unconditional obligation to sell" its interests in Native Roots to Left Coast. (Am. Compl. Doc. 9, ¶19.) In support of this allegation, Plaintiff quotes the LOI, which states that "[t]his LOI represent[s] a binding commitment by [Brightstar] to undertake the obligations set forth herein, including without limitation the obligation to sell and transfer to Buyer (i) the membership interests of [Native Roots] . . . all subject to Buyer's completion of its due diligence investigation[.]" (*Id.*)

Notwithstanding that this language is merely aspirational given that the remaining language of the LOI clearly states that the LOI concerns only a "possible acquisition" with "proposed terms" and that "[t]he obligations of the parties with respect to the proposed transaction are not intended to be legally binding unless and until a definitive agreement with respect to the proposed transaction is executed," Plaintiff's reliance on this conditional "commitment" is further misplaced in light of other terms, which Plaintiff never mentioned in its

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1    Complaint and never mentioned again in its Amended Complaint—even after Brightstar raised

2    the same argument in its first motion to dismiss. (*See* Mot. Dismiss Doc. 6, p.7-8.)

3        Indeed, any binding obligations the LOI created expired on December 31, 2017, pursuant

4    to the express terms of the LOI. (*See* Am. Compl. Doc. 9, p. 14)  After that date, Brightstar was

5    expressly free to "solicit, initiate, approve, facilitate or encourage, engage in discussions or

6    negotiations with, or furnish information to, any person other than [Plaintiff] with respect to a

7    Competing Transaction," which is defined in relevant part as "any transfer or sale of

8    [Brightstar]'s membership interests in [Native Roots]." (*Id.*) Plaintiff's First Amended Complaint

9    says nothing about this provision in the LOI. To the extent Plaintiff believes that the term does

10   not apply or does not permit Brightstar to sell its interests to another interested buyer, such

11   interpretation would lead to an absurd result: On one hand, Brightstar would be compelled to sell

12   its interests in Native Roots to Plaintiff; on the other hand, Brightstar would be free to solicit bids

13   from other interested parties after December 31, 2017. *See Eurick v. Pemco Ins. Co.*, 738 P.2d

14   251, 252 (Wash. 1987) (stating that contract interpretation should not produce an "absurd

15   result[]").

16       Accordingly, Plaintiff has no basis to claim that Brightstar has the "unconditional [never-

17   ending] obligation" to sell its interests in Native Roots to Plaintiff.

18       **4.      Moreover, even if Plaintiff can allege a breach of the LOI, Plaintiff's request**

19       **for specific performance also fails as a matter of law.**

20       "Generally, specific performance . . . will not be ordered if damages would be adequate to

21   protect the expectation interest of the injured party." *Empire Health v. CHS*, No. 2:17-CV-00209-

22   SMJ, 2019 WL 982858, at *8 (E.D. Wash. Feb. 27, 2019) (quoting Restatement (Second) of

23   Contracts § 359). Liquidated damages clauses thus preclude a party's right to seek specific

24   performance "where the contract indicates that to be the result which both parties had in mind."

25   *Asia Inv. Co. v. Levin*, 204 P. 808, 810 (Wash. 1922). Where the liquidated damages clause is

26   intended as a substitute for performance—i.e. "where the [seller] might comply with the contract

1    or pay liquidated damages in lieu thereof," then "specific performance is not available." *Id.*

2         As previously explained, the Summary of Terms attached to the LOI begins with a

3    preamble expressly stating that it was not intended to create any legally binding obligations

4    "unless and until a definitive agreement with respect to the proposed transaction is executed," but

5    then went on to include a ***proposed*** term of any definitive agreement which unambiguously states

6    that "[i]f, through no fault of [Plaintiff], the Proposed Acquisition does not close, [Brightstar]

7    agrees to pay to [Plaintiff] as liquidated damages the amount of $2,000,000 cash[.]" (Am. Compl.

8    Doc. 9, at p.18-19.)  This provision forecloses specific performance because it granted Brightstar

9    the option to sell and avoid the liquidated damages payment or not sell and risk being held liable

10   for the payment.

11        To be clear, Brightstar does not believe Plaintiff is entitled to liquidated damages because

12   no legally binding agreement was ever reached, nor has Plaintiff alleged (nor could it) that

13   Brightstar interfered with Plaintiff's due diligence inquiries of Brightstar's business. But to the

14   extent that Plaintiff seeks to assert some breach of the LOI as if it were a legally binding and

15   enforceable contract to sell the business, Plaintiff is foreclosed from seeking specific performance

16   as a matter of law.

17   ## CONCLUSION

18        Letters of intent establish the parameters for future negotiations and contracts. They often

19   contain intentions, statements of understanding, and aspirational language. The language Plaintiff

20   hangs its hat on is aspirational language—it created no unconditional, ever-lasting obligation for

21   Brightstar to sell Left Coast its interests in Native Roots. Plaintiff's Complaint seeking to compel

22   Brightstar to sell Plaintiff its interests in Native Roots was therefore legally deficient, and

23   Plaintiff's First Amended Complaint did little, if anything, to rectify that deficiency. This case

24   must be dismissed prejudice.

25

26

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 9

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Dated: June 13, 2019

By: */s/ Parker C. Folse, III*
Parker C. Folse III, WSBA #24895
pfolse@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Phone: (206) 516-3880
Fax: (206) 516-3883

*Attorneys for Defendant Brightstar, LLC*

Def.'s Mot. to Dismiss Pls First Am. Compl.
Case No. 2:19-cv-00686-RSM - 10

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Parker C. Folse III
Parker C. Folse III

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883