Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEFT COAST VENTURES, INC. a Delaware corporation,<br><br>               Plaintiff,<br><br>v.<br><br>BRIGHTSTAR, LLC, a limited liability company organized under the laws of Colorado,<br><br>               Defendant. | Case No. 2:19-cv-00686-RSM<br><br>**DEFENDANT'S CORRECTED REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>July 5, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Brightstar, LLC ("Brightstar"), through undersigned counsel, hereby submits the following Reply in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

**INTRODUCTION**

Plaintiff's response to Brightstar's Motion to Dismiss Plaintiff's First Amended Complaint asks the Court to ignore basic principles of contract construction and to accept a fanciful interpretation of its letter of intent ("LOI") as an apparently perpetual option. Washington law is clear on the requirements for a valid option contract: it must specify all material and essential terms of the future contract and must be binding by those terms for which a collateral offer is kept open for a period of time. For the reasons that follow, Plaintiff's LOI does not meet these requirements as a matter of law. And as discussed below, Plaintiff's attempts to overcome the other independently

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 1
Case No. 2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

fatal flaws in its claim are no more successful. This case should be dismissed.

## STATEMENT OF FACTS

Brightstar stated the relevant facts in its Motion to Dismiss, (*see* Doc. 13 at 2-4); below is a condensed version:

On August 25, 2017, Plaintiff's predecessor (Privateer) sent Brightstar an LOI regarding the conduct of discussions for the possible acquisition by Plaintiff of Brightstar's interests in Native Roots, LLC ("Native Roots"). (Am. Compl. Doc. 9 at 13.) Specifically, the LOI first contemplated that Brightstar would transfer its membership interests in three different LLCs, "and all of their respective subsidiaries and affiliates[.]" (*See id.* at 13 & 21) (listing all the subsidiaries and affiliates). Second, the LOI contemplated that Brightstar would transfer all of its interests in "the real property, leases, and debt under the First Amended and Restated Loan Agreement[.]" (*Id.*) For this "possible acquisition," Brightstar agreed to cooperate with Privateer while Privateer undertook due diligence to assess whether to eventually enter into negotiations to buy Brightstar's interest in Native Roots. (*Id.* at 13.)

To ensure fruitful and good faith negotiations, the LOI provided that Brightstar would deal exclusively with Privateer until December 31, 2017. (*Id.*) After that date, Brightstar was free to seek other interested purchasers for Brightstar's interests in Native Roots. (*Id.*) Also attached to the LOI was a "summary of proposed terms[,]" which explicitly stated that the contents of the LOI and the proposed terms were not legally binding on the parties until a definitive agreement was entered into, and moreover that the LOI created no obligation for the parties to negotiate for a definitive agreement. (*Id.* at 17.) One of the proposed terms provided Plaintiff with liquidated damages in the amount of $2,000,000 cash in the event the proposed transaction did not close through no fault of Plaintiff. (*Id.* at 18-19.)

On or around February 22, 2019, Brightstar informed Privateer that Brightstar intended to sell its interests in Native Roots to any suitable candidate, including Plaintiff. (*See* Doc. 16 at 4.) Notwithstanding the lack of any allegation in Plaintiff's Complaint (or Plaintiff's First Amended Complaint) that Privateer Holdings or Plaintiff initiated, let alone completed, any due diligence—

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 2
Case No.  2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

or that Brightstar somehow interfered with Plaintiff's due diligence efforts—Plaintiff now requests declaratory judgment and asserts a breach of contract claim against Brightstar, positing that Plaintiff "is entitled to the remedy of specific performance because an award of money damages would be inadequate to compensate Left Coast for Brightstar's breach." (Doc. 9, ¶39.)

Plaintiff is not entitled to specific performance or to any other form of relief: It has failed to state a claim for breach of contract. The specter of this lawsuit is hampering Brightstar's ability to engage in legitimate commercial transactions. As demonstrated below, this case should be dismissed with prejudice as soon as possible.

## ARGUMENT

Plaintiff relies on a noncommittal, indefinite and therefore unenforceable letter of intent to compel Brightstar to sell Plaintiff its interests in Native Roots. Plaintiff asks the Court to hold that the LOI is an option contract under which Brightstar is burdened, apparently in perpetuity, with the "unconditional obligation to sell all of the membership interests of the Native Roots Entities." (Doc. 16 at 3.)  The LOI, however, cannot qualify as an option contract under Washington law because it lacks material and essential terms necessary to consummate the transaction. Moreover, even if the LOI somehow constituted an option contract, it cannot continue in perpetuity, as Plaintiff seems to suggest, because that runs afoul of Washington law and because any conceivable option expired on December 31, 2017. As stated in Brightstar's motion to dismiss, the LOI is nothing more than an agreement to agree. Plaintiff's request for specific performance of a nonbinding, expired LOI fails as a matter of law.

### 1. The LOI is not an option contract.

Plaintiff argues that the LOI granted it "an option to purchase the Native Roots Entities on the terms described elsewhere in the Contract." (Doc. 16 at 9.) According to Plaintiff, "Exhibit A to the Contract sets forth all of the essential terms of [Plaintiff's] acquisition of the Native Roots Entities." (*Id.* at 10, fn.3.) To conform to this theory, Plaintiff characterizes the LOI's conditional language—"possible acquisition"; "proposed terms"; "each party agrees that no contract . . . shall exist or be deemed to exist by virtue of this LOI"— as words "used [only] because the Contract

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 3
Case No.  2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

granted Privateer Holdings (or its designee) an option to complete the purchase subject to its due diligence." (*Id.* at 9.) In other words, the terms were labeled "proposed" only "because they would not become final until [Plaintiff] exercised the option[,]" at which time the LOI would be binding on both parties and Brightstar would be compelled to sell its interests in Native Roots. (*Id.* at 10.)

Plaintiff's argument fails for two reasons: (1) because the LOI does not plainly specify all material and essential terms for the proposed transaction; and (2) because the conditional language throughout the LOI was plainly (and unambiguously) not intended to exclusively benefit Plaintiff.

a) <u>The LOI does not contain specific, material, and essential terms.</u>

An option contract "must specify all of the material and essential terms of the future contract before a court may order specific performance." *Kruse v. Hemp*, 853 P.2d 1373, 1377 (Wash. 1993). Where a party seeks specific performance, "a higher standard of proof must be met: 'clear and unequivocal' evidence that 'leaves no doubt as to the terms, character, and existence of the contract." *Id.* (citation omitted). For option contracts dealing with real estate, Washington courts have outlined at least thirteen material terms, including (1) "time and manner for transferring title," (2) "allocation of risk with respect to damage or destruction," (3) "insurance provisions," (4) responsibility for "removal or replacement of personal property," and (5) "indemnification provisions." *Id.* (citing *Hubbell v. Ward*, 246 P.2d 468 (Wash. 1952)). "Based on *Hubbell*, the standard practice in Washington is to attach, to an option agreement, a copy of a real estate contract form on which the parties have agreed." *Id.* at 1378.

While Plaintiff has framed the potential transaction as one through which Brightstar would transfer its interests in Native Roots to Plaintiff, it is not that simple: First, the LOI contemplated that Brightstar might transfer its membership interests in three different LLCs, "and all of their respective subsidiaries and affiliates[.]" (Doc. 9 at 13.) Second, the LOI contemplated that Brightstar might transfer all its interests in "the real property, leases, and debt under the First Amended and Restated Loan Agreement[.]" (*Id.*) The "essential terms" in the LOI, as Plaintiff calls them, do not capture the complexity of what this transaction would require—e.g. there are no indemnification provisions; no provision specifying the time and manner of transferring title to the

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 4
Case No. 2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

real estate assets; and no provisions allocating risk regarding the leases, such as who is liable to a landlord in case of a breach of the lease. There is also no real estate contract form attached to the LOI, which the Court in *Kruse* (*supra*) identified as standard practice in Washington following the Supreme Court's decision in *Hubbell*, assuming Washington law would ultimately apply to this proposed transaction.[1] The three pages of "essential" terms proposed by Plaintiff are wholly inadequate to consummate the transaction it asks this Court to compel.

Further, the terms included in the LOI, in addition to being materially incomplete, are neither specific nor conclusive. For example, the LOI states in regard to representations, warranties, and covenants, that "[e]ach party to the definitive agreement would make, and the definitive agreement would reflect, such representations, warranties and covenants as are typical for a transaction of this nature involving the acquisition of a company this size and complexity[.]" (*Id.* at 19.) The LOI states that the "transaction would be structured as a membership interest purchase *or similar transaction* as determined by Buyer[.]" (Doc. 9 at 18) (emphasis added). That language does not assign exclusive responsibility to the putative Buyer to determine the nature of the representations, warranties, and covenants; it contemplates further discussion and negotiation, and it cannot be conclusively presumed that the parties would agree on what would be "typical" in a "similar transaction," involving the sale of a marijuana business that has only been legal under certain State laws for a brief number of years and remains illegal under federal law. Finally, the LOI introduces the proposed terms by stating that "[t]his document outlines certain preliminary terms regarding the proposed [acquisition] . . .. The obligations of the parties with respect to the proposed transaction are not intended to be legally binding unless and until a definitive agreement . . . is executed[.]" (*Id.* at 17.) As the Washington Supreme Court established long ago,

---

[1] Although Plaintiff seems to assume in its briefing that Washington law would govern a final definitive agreement, it is unclear whether Washington law would apply to any ultimate definitive agreement or if Colorado law would apply, given that the real estate is located in Colorado and that Colorado regulatory bodies would be involved in this proposed transaction. This term is yet another one that was not discussed, understood, or negotiated when the LOI was entered into, and is not addressed in the LOI.

| | |
|---|---|
| Deft's Corrected Reply in Support of Defendant's Motion to Dismiss First Amended Complaint - 5<br>Case No.  2:19-cv-00686-RSM | S U S M A N  G O D F R E Y  L . L . P .<br>1201 Third Avenue, Suite 3800<br>Seattle, WA 98101-3000<br>Tel: (206) 516-3880; Fax: (206) 516-3883 |

> If the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the writing is made out; or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract.

*Plumbing Shop, Inc. v. Pitts*, 408 P.2d 382, 386 (Wash. 1965) (holding that there was no contract because "imply[ing] the remaining essentials [to an implied-in-fact contract] by way of custom and usage would violate the elementary principle that the court will not make a contract for the parties"). Plaintiff's post-hoc attempt to have this Court construe the LOI as an option contract fails as a matter of law.

          b)      <u>The LOI's noncommittal language and proposed terms do not only benefit Plaintiff.</u>

Plaintiff avers that Brightstar made a binding, unconditional commitment to sell its interests in Native Roots, and that the LOI's language regarding the noncommittal nature of the LOI and its proposed terms have no effect on Brightstar's obligations. (*See* Doc. 16 at 8-9.) Specifically, Plaintiff first notes that "Washington law has long recognized that parties can 'enter a binding contract even if the parties contemplate a more formal future document.'" (*Id.* at 8) (citation omitted). Second, Plaintiff argues that the provisional, noncommittal language in the LOI is nothing more than "words and phrases [] used because the Contract granted [Plaintiff] an option to complete the purchase subject to its due diligence." (*Id.* at 9.)

Plaintiff's argument is conclusory and unavailing. It is true that parties sometimes enter into contracts assenting to all material terms before executing "formal documents." But the parties here did not agree to all material terms, and they contemplated not merely a more "formal" future document, but an actual, definitive acquisition agreement that would require further negotiation:

> The obligations of the parties with respect to the proposed transaction are not intended to be legally binding unless and until a definitive agreement with respect to the proposed transaction is executed, and this document creates no obligation for either party to negotiate with respect to such transaction or to enter into such

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 6
Case No. 2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

definitive agreement.

(Doc. 9 at 17.)

Furthermore, the LOI is clear that the noncommittal nature of the LOI applies not only to Plaintiff but also to Brightstar, stating "*each party* agrees that no contract, agreement, obligation, commitment or liability with respect to the Proposed Transaction . . . shall exist or be deemed to exist by virtue of this LOI"; "[t]he obligations of the *parties* with respect to the proposed transaction are not intended to be legally binding"; "this document creates no obligation for *either party* to negotiate with respect to such transaction or to enter into such definitive agreement." (*Id.* at 13, 17) (emphasis added). With respect to the last of these clauses, there would have been no need to specify that **neither** party would be obligated to negotiate if no negotiations remained to be concluded, and no reason to state that **neither** party would be obligated to enter into a definitive agreement if **only** the Buyer had the option to enter into such an agreement or to walk away.

The noncommittal language in the LOI thus plainly operates to benefit both parties. Plaintiff, however, in an attempt to avoid dismissal, suggests that the LOI is ambiguous because the noncommittal language conflicts with Brightstar's unconditional obligation to sell its interests in Native Roots. (Doc. 16 at 11.) In casting about for this ambiguity, Plaintiff ignores standard principles of contract interpretation. *See Eurick v. Pemco Ins. Co.*, 738 P.2d 251, 252 (Wash. 1987) (stating that a contract "should be given a 'practical and reasonable rather than a literal interpretation'") (citation omitted). Indeed, courts interpret contracts in accordance with its terms' "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Communications, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). *See also Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 279 (9th Cir. 1992) (stating that a fundamental rule of contract interpretation is to avoid rendering portions of an agreement as meaningless or superfluous); *McGary v. Westlake Inv'rs*, 661 P.2d 971, 974 (Wash. 1983) (stating that ambiguities "will not be read into a contract where it can reasonably be avoided by reading the contract as a whole").

Under Washington law, the language in the LOI that refers to Brightstar's "binding

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 7
Case No.  2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

commitment…to sell and transfer [its interests in Native Roots]" is ***not*** accorded a literal interpretation, stripped of the context in which it appears, but rather a reasonable one, in the context of the entirety of the LOI—which makes clear that no legally binding obligations exist. The single sentence from which Plaintiff builds its entire case refers to the purpose of the LOI: The LOI bound Brightstar to deal exclusively with Privateer (up to a specified point in time) in attempting to negotiate a final sale of the business and its assets, but the conditional language in the LOI was repeatedly included to ensure that the LOI itself would not be read as a binding contract of sale. That is, the "binding commitment" provision describes the purpose of the LOI and Brightstar's good faith pledge to move negotiations forward, while the conditional language clarifies that the parties were not yet bound by any contract to sell the business.

The LOI is not ambiguous—it sought to advance negotiations while expressly refraining from binding the parties to a final deal. Plaintiff's position to the contrary again fails as a matter of law.

### 2.     Even if the LOI could be construed as a valid option contract, that option was never exercised and expired on December 31, 2017.

An option contract "is a complete, valid and binding agreement by the terms of which a collateral offer is kept open for a specified period of time." *Bennett Veneer Factors, Inc. v. Brewer*, 441 P.2d 128, 132 (Wash. 1968). To the extent one construes the LOI as a valid option contract—contrary to its language and governing law—the purported option expired on December 31, 2017. (*See* Doc. 9 at 14) (labeling the date as the "Termination Date"). After that date, Brightstar was not required to deal exclusively with Plaintiff and was expressly free to "solicit, initiate, approve, facilitate or encourage, engage in discussions or negotiations with, or furnish information to, any person other than [Plaintiff] with respect to a Competing Transaction," which is defined in relevant part as "any transfer or sale of [Brightstar]'s membership interests in [Native Roots]." (*Id.*)

Plaintiff failed to address this provision in its Complaint, or even in its Amended Complaint after Brightstar raised the issue in its first motion to dismiss. Plaintiff now contends in its Response that this "Termination Date" does not apply to the LOI as a whole but rather to Brightstar's

commitment to exclusively deal with Plaintiff. What this means is unclear, not only because Plaintiff does not explain this interpretation, but also because that interpretation confounds logic: On the one hand, Plaintiff argues that Brightstar was perpetually bound to sell its interests in Native Roots to Privateer or any subsequent assignee at the latter's election. On the other hand, Plaintiff's position is that after December 31, 2017, Brightstar would not have to deal exclusively with Plaintiff, and could agree to sell to someone else, yet Brightstar would ***still remain bound*** to sell its interests in Native Roots only to Plaintiff. Option contracts by definition cannot be open in perpetuity. *See Robroy Land Co. v. Prather*, 622 P.2d 367, 371 (Wash. 1980) (stating that contracts without duration "should be presumed as intended to last only for a reasonable time"). Plaintiff's fanciful interpretation of the LOI fails as a matter of law.

### 3. The LOI is an agreement to agree.

Plaintiff acknowledges that "agreements to agree" are unenforceable under Washington law but argues that the cases addressing this principle "add nothing to the Court's analysis here." (Doc. 16 at 6.) Specifically, Plaintiff argues that *Keystone Land* and *Johnson* do not apply in this case, and that Brightstar's reliance on *Casad* violates court rules and is misplaced.[2] (*Id.* at 4-6.) Plaintiff is incorrect on all fronts.

The issue before this Court is whether the LOI is an agreement to agree. Brightstar cited *Keystone* and *Johnson* for the general proposition that agreements to agree are unenforceable under Washington law, (*see* Doc. 13 at 5); the fact that these cases alone are not 100% factually analogous to this case does not render the legal principles regarding agreements to agree, which they discuss, inapplicable to this case.

---

[2] Just as federal courts are "not bound by unpublished decisions of intermediate state courts" but may nonetheless take them into consideration, this court may look to *Casad* as persuasive authority. *See Brady v. Autozone Stores, Inc.*, No. C13—1862 RAJ, 2015 WL 5732550, *4, fn. 2 (W.D. Wash. Sept. 30, 2015) ("Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority"); *cf. also* GR 14.1(c) (stating that Washington appellate courts may cite or discuss unpublished opinions if "necessary for a reasoned decision[.]").

Deft's Corrected Reply in Support of Defendant's  
Motion to Dismiss First Amended Complaint - 9  
Case No. 2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
Tel: (206) 516-3880; Fax: (206) 516-3883

Moreover, while it is true that *Johnson* dealt partly with an un-accepted counteroffer which could not be construed as an acceptance to the offer the plaintiff had made, *Johnson v. Star Iron & Steel Co.*, 511 P.2d 1370 (Wash. Ct. App. 1973), the plaintiff there also "sought an option to purchase the subsidiary corporation on terms to be negotiated in the near future." *Id.* at 1373. The court noted that "[i]f this proposed option were intended by plaintiffs as a necessary and integral part of the offer to obtain financing, it would render the entire offer too indefinite to be capable of acceptance." *Id.* The court indeed found the offer "too indefinite" and therefore concluded "that no contract came into existence as a result of defendant's letter[.]" *Id.* at 1374.

Notably the court pointed out:

> It appears self-evident that before a proposal can ripen into a contract, upon the exercise of the power of acceptance by the one to whom it is made, it must be definite enough so that when it is coupled with the acceptance it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed.

*Id.* at 1373-74.

The LOI in this case is not a mutually assented to contract of sale, but rather an agreement on certain important terms and the specification of a process for determining whether a final contract of sale could be arrived at, but which also makes expressly clear that neither party was contractually obligated to negotiate or to enter into a definitive agreement. (Doc. 9 at 17.) The difference between *Johnson* and this case is that the negotiations in *Johnson* were further along, whereas the LOI in this case merely initiated the process for a possible acquisition.

Agreements to agree are "agreement[s] to do something which requires a further meeting of the minds of the parties and without which it would not be complete[.]" *Sandeman v. Sayres*, 314 P.2d 428, 429 (Wash. 1957). That is unambiguously the case here, and therefore the LOI is unenforceable under Washington law.

### 4. Plaintiff cannot seek specific performance.

Plaintiff argues that it is entitled to seek specific performance because the parties did not

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 10
Case No.  2:19-cv-00686-RSM

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

clearly express their intent to limit Plaintiff's remedies to the liquidated damages included in the proposed terms from the LOI. (Doc. 16 at 14.) Plaintiff's focus on what the LOI does not expressly foreclose (specific performance) ignores that the LOI in so many other respects fails to "specify all of the material and essential terms of the future contract." *Kruse*, 853 P.2d at 1377. Because these material and essential terms of the future contract are not specified in the LOI, the Court cannot order specific performance, even if the Court concludes that the LOI does not include a sufficiently explicit foreclosure of such relief. *Id.* Indeed, because Plaintiff undoubtedly knew that the LOI failed to "leave[] no doubt as to the terms, character, and existence of the contract[,]" *id.*, the LOI included a liquidated damages clause as a proposed term to which the Buyer agreed, to compensate Plaintiff in the event that the LOI did not result in a final, enforceable agreement and the closing of a sale, under the circumstances specified in that clause. Plaintiff makes the conclusory assertion that the existence of the clause is not a sufficiently clear expression of the parties' intent to limit Plaintiff's remedies to liquidated damages, but offers no other explanation for why it was included. Particularly in the context of an LOI that failed to specify all of the material and essential terms of the contract, it is entirely sensible to construe the clause as the specification of an exclusive remedy, even if one assumes that the LOI was more than an unenforceable agreement to agree. Specific performance is thus unavailable as a matter of law and Plaintiff's claim seeking this remedy must be dismissed.

## **CONCLUSION**

Despite Plaintiff's best efforts, the LOI in this case is what letters of intent usually are—writings that detail the preliminary understandings of parties who intend to enter into an agreement in the future. Along the same rationale, this LOI is not an option contract because it lacks all the essential terms required to consummate a transaction of this magnitude at the time the option is exercised. Plaintiff shows its hand when it addresses the exclusivity period in the LOI. Options cannot continue in perpetuity. For those reasons, and others set forth above, this case must be dismissed with prejudice.

Deft's Corrected Reply in Support of Defendant's
Motion to Dismiss First Amended Complaint - 11
Case No. 2:19-cv-00686-RSM

S U S M A N   G O D F R E Y   L . L . P .
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1   DATED July 9, 2019.                    Respectfully submitted,

2                                          By: */s/ Parker C. Folse III*
3                                              Parker C. Folse III, WSBA #24895
                                               pfolse@susmangodfrey.com
4                                              SUSMAN GODFREY L.L.P.
                                               1201 Third Avenue, Suite 3800
5                                              Seattle, WA 98101
                                               Phone: (206) 516-3880
6                                              Fax: (206) 516-3883

7                                              Christopher O. Murray
                                               cmurray@bhfs.com
8                                              BROWNSTEIN HYATT FARBER SCHRECK, LLP
                                               410 Seventeenth Street, Suite 2200
9                                              Denver, CO 80202
                                               Phone: (303) 223-1100
10

11                                             *Attorneys for Defendant Brightstar, LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Parker C. Folse III*
Parker C. Folse III

Certificate of Service - 1

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883