UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEFT COAST VENTURES, INC., a Delaware corporation,

Plaintiff,

v.

BRIGHTSTAR, LLC, a limited liability company organized under the laws of Colorado,

Defendant.

CASE NO. C19-686 RSM

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION[1]

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. #13. Plaintiff Left Coast Ventures, Inc., opposes the Motion. Dkt. #16. Both parties have requested oral argument, but the Court finds oral argument unnecessary to its resolution of this matter.[2] The Court grants Defendant's Motion.

---

[1] The Court cites to the record utilizing the docket numbers and pagination applied by the Court's CM/ECF system. Where the nature of the document permits the Court to appropriately and clearly cite to numbered paragraphs or page and line numbers, the Court does so.

[2] LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

ORDER – 1

## II. BACKGROUND

Plaintiff's declaratory judgment and breach of contract action arises from Defendant's ultimate decision to not sell Plaintiff its interest in Native Roots,[3] a "Colorado-based cannabis retail chain." Dkt. #9 at ¶ 1.

The relevant history begins when Defendant offered to buy out Josh Ginsberg's ("Mr. Ginsberg") membership interest in the Native Roots corporate entities pursuant to a provision in the relevant operating agreements. *Id.* at ¶¶ 11–12. This in turn gave Mr. Ginsberg an opportunity to buy out Defendant's membership, but he lacked the capital to do so and sought the financial assistance of Privateer Holdings, Inc. ("Privateer"). *Id.* at ¶¶ 11–15. Privateer investigated the situation, ultimately learning that Defendant planned to sell Native Roots after he obtained full ownership. *Id.* at ¶ 16. Privateer entered into a "Letter of Intent" with Defendant to buy all Defendant's interest in Native Roots following Defendant's consolidation of ownership. *Id.* at ¶¶ 17–18, p.13–21 (Ex. A). Defendant's consolidation of ownership was delayed longer than expected. *Id.* at ¶¶ 21–24. Defendant and Privateer continued to discuss the possibility of an agreement superseding the Letter of Intent but did not ultimately agree. *Id.* at ¶¶ 22–30. Privateer assigned its rights under the Letter of Intent to Plaintiff. *Id.* at 28.

Plaintiff, as the assignee of Privateer, initiated this action to enforce the terms of the Letter of Intent, which it maintains is an enforceable contract. *Id.* Plaintiff pursues a declaratory judgment, specific performance, and money damages. *Id.* Defendant seeks dismissal of the action on the basis that no enforceable contract exists. Dkt. #13.

---

[3] Native Roots in fact consists of three separate limited liability companies organized under Colorado law, but the distinction does not matter here. Dkt. #9 at ¶¶ 9–10. Defendant also owned an interest in the property underlying Native Roots locations. *Id.* at ¶ 12.

ORDER – 2

### III. DISCUSSION

**A. Legal Standard**

In considering a Federal Rule of Procedure 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

A complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

**B. Plaintiff's Complaint Should Be Dismissed**

The parties' disagreement is over the legal effect of the Letter of Intent. Defendant maintains that the Letter of Intent was merely an unenforceable agreement to agree. Dkt. #13 at

5–8. Plaintiff maintains that it was a completed option contract giving Plaintiff a perpetual right to "complete the purchase subject to its due diligence." Dkt. #16 at 1, 8–10. The Court addresses the arguments in turn.

The parties agree that under Washington law,[4] "agreements to agree" are unenforceable. Dkt. #13 at 5; Dkt. #16 at 4. An agreement to agree is "an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 175, 94 P.3d 945, 948 (2004) (quoting *Sandeman v. Sayres*, 50 Wash.2d 539, 541–42, 314 P.2d 428, 430 (1957)) (quotation marks omitted). "An agreement to negotiate a contract in the future is nothing more than negotiations." *Johnson v. Star Iron & Steel Co.*, 9 Wash. App. 202, 206, 511 P.2d 1370, 1373 (1973) (citing *Sandeman*). Such a proposal can "ripen into a contract" only if it is "definite enough so that when it is [accepted] it can be determined, with at least a reasonable degree of certainty, what the nature and extent of the obligation is which the proposer has assumed." *Id.* at 1373–74 (citations omitted).

Here, there appears to be little question that the Letter of Intent is an unenforceable agreement to agree. The Letter of Intent indicates that it is an "agreement . . . regarding the *conduct of discussions* relating to the *possible acquisition*" of Native Roots. Dkt. #9 at 13 (emphasis added). The Letter of Intent has additional limiting language:

> Other than as specifically set forth herein, however, each party agrees that no contract, agreement, obligation, commitment or liability with respect to the Proposed Acquisition or any other transaction shall exist or be deemed to exist by virtue of the [Letter of Intent], any other written or oral expression with respect to the Proposed Acquisition or otherwise, unless and until; the parties have completed negotiations and obtained corporate approvals and have executed and delivered a definitive acquisition agreement. For the purposes of this [Letter of Intent], the term "definitive acquisition agreement" shall not include any written

---

[4] The parties do not dispute that the Letter of Intent is governed by Washington law. Dkt. #9 at 15.

ORDER – 4

or oral acceptance of any offer or bid, any term sheet or any letter of intent or other written expression of [Plaintiff's] or [Defendant's] intentions to negotiate or enter into a definitive acquisition agreement.

*Id.* at 13–14.  The parties attached a "Summary of Terms," and that attachment also specified that it outlined only "*preliminary terms* regarding the *proposed purchase*."  *Id.* at 17 (emphasis added).  The Summary of Terms further provided:

> The obligations of the parties with respect to the proposed transaction are not intended to be legally binding unless and until a definitive agreement with respect to the proposed transaction is executed, and this document creates no obligation for either party to negotiate with respect to such transaction or to enter into such definitive agreement.

*Id.*

Plaintiff's primary argument, that the Letter of Intent is an option contract, is unavailing.[5]  Because of the nondefinite language of the Letter of Intent, Plaintiff faces an uphill battle and argues that the parties used language indicating a lack of mutual assent in the option contract because Plaintiff had not yet actually elected to exercise its option.  Dkt. #16 at 9–10.  But the Court agrees with Defendant's arguments to the contrary.  Dkt. #18 at 3–8.  Most importantly, Defendant points out that option contracts related to real property transactions must contain additional material terms.  *Id.* at 4 (citing *Kruse v. Hemp*, 121 Wash.2d 715, 853 P.2d 1373 (1993)).  Pointing to the various provisions in the Letter of Intent indicating the need for further negotiation, Defendant argues the Letter of Intent is too indefinite to be an enforceable option contract.  *Id.* at 5–6.  The Court agrees.

---

[5] Plaintiff also attacks the "agreement to agree" cases relied upon by Defendant on their facts and alleged procedural errors.  Dkt. #16 at 4–8.  But Plaintiff does not dispute that "agreements to agree" are legally unenforceable and its arguments do nothing to challenge the underlying legal principals.

ORDER – 5

The Court finds further support in Defendant's argument that "any conceivable obligation the [Letter of Intent] intent created expired pursuant to the terms of the letter" on December 31, 2017. *Id.* at 8–9. After that date, Defendant was no longer required to deal only with Plaintiff, but could "solicit, initiate, approve, facilitate or encourage, engage in discussions or negotiations with, or furnish information to, any person other than [Plaintiff] with respect to a" competing sale. Dkt. #9 at 14.

Plaintiff's argument that the provision only terminated its exclusive negotiating rights is again unavailing and inconsistent. Dkt. #16 at 13. On the one hand, Plaintiff argues that the Letter of Intent was a binding option contract obligating Defendant to sell its interest in Native Roots. *Id.* at 8–10. On the other hand, Plaintiff argues that the "Termination Date" applied only to the "Exclusivity Clause." *Id.* at 13. As Defendant notes, this would result in an untenable situation allowing Defendant to negotiate a sale to third parties but still obligating Defendant to sell to Plaintiff and leaving intact Plaintiff's right to exercise its option.[6] Dkt. #18 at 8–9.

### IV. CONCLUSION

Having reviewed Defendant's Motion, the relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #13) is GRANTED.

2. All of Plaintiff's claims asserted in Plaintiff's First Amended Complaint (Dkt. #9) are DISMISSED.

---

[6] Lastly, the Court notes that even assuming the Letter of Intent was an option contract, Plaintiff's Amended Complaint does not allege an exercise of its option, and certainly no exercise of its option before December 31, 2017, the "Termination Date" of the Letter of Intent. For this reason alone, Plaintiff's Amended Complaint may also fail to adequately allege a claim. *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wash. App. 305, 318, 358 P.3d 483, 490 (2015) ("an option contract is not binding until consideration passes").

ORDER – 6

1 | 3. Plaintiff is not granted leave to amend.[7]

2 | 4. This matter is CLOSED.

DATED this 24th day of October 2019.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court first notes that Plaintiff has already amended its complaint in response to Defendant's first Motion to Dismiss (Dkt. #6). In so doing, Plaintiff only made two additional allegations on tangential matters. Secondly, Plaintiff did not request leave to file a Second Amended Complaint. On this record the Court finds that Plaintiff is unable to allege facts consistent with the complaint to cure the deficiencies.

ORDER – 7